UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

EAZYPOWER CORPORATION,

    Plaintiff,

v.

JORE CORPORATION,

    Defendant.

No. 04 C 6372
Judge James B. Zagel

## MEMORANDUM OPINION AND ORDER

Pursuant to *Markman v. Westview Instruments, Inc.*, 517 U.S. 370 (1996), I held a claim construction hearing in this case to determine the appropriate meaning of some of the contested words used in the patent-in-issue. After considering the parties' papers and presentations, I construe the claims at issue as follows.

### I.    BACKGROUND

Plaintiff Eazypower Corporation ("Eazypower" or "Plaintiff") owns U.S. Patent No. 4,876,929, entitled "Portable Screw Driver Having Flexible Extension Shaft" (the "'929 Patent"). Eazypower alleges that Defendant Jore Coroporation ("Jore" or "Defendant") infringed the '929 Patent with its Jore "Flex Shaft." Jore argues that its product is not infringing and that the '929 Patent is otherwise invalid.

The '929 Patent has two independent claims, numbers 1 and 7, and six dependent claims, numbers 2 through 6 and 8. There are really only two claim construction issues before me. The first has to do with the meaning of the preamble, and the second involves the phrase "said flexible extension shaft normally being disposed so as to be substantially entirely coaxial with said chuck."

## II. THE STANDARD PRINCIPLES OF CLAIM CONSTRUCTION

Claim construction is a matter of law for the court to decide. *Markman*, 517 U.S. at 389. In order "[t]o ascertain the meaning of claims, [the court] consider[s] three sources: The claims, the specification, and the prosecution history." *Markman v. Westview Instruments, Inc.*, 52 F.3d 967, 979 (Fed. Cir. 1995) (citations omitted). These three sources are the intrinsic evidence, public records available for all to consult and rely upon when determining the meaning and scope of a patent claim. *Vitronics Corp. v. Conceptronic, Inc.*, 90 F.3d 1576, 1583 (Fed. Cir. 1996). When the intrinsic evidence unambiguously describes the scope of a patented invention, reliance on extrinsic evidence, such as expert testimony and treatises, is inappropriate. *Id.*

Claim interpretation begins with the actual language of the claims. *Bell Commc'ns Research, Inc. v. Vitalink Commc'ns Corp.*, 55 F.3d 615, 619-20 (Fed. Cir. 1995). Generally, the words, phrases and terms in patent claims should receive their ordinary and accustomed meaning. *Johnson Worldwide Assocs. v. Zebco Corp.*, 175 F.3d 985, 989 (Fed. Cir. 1999) (noting a "heavy presumption in favor of the ordinary meaning of claim language."). The strong presumption in favor of the ordinary meaning may be overcome only when the patentee "clearly set[s] forth a definition for a claim term in the specification." *Anchor Wall Sys. v. Rockwood Retaining Walls, Inc.*, 340 F.3d 1298, 1306 (Fed. Cir. 2003) (*citing Johnson Worldwide Assoc.*, 175 F.3d at 989-90). "[A] technical term used in a patent claim is interpreted as having the meaning a person of ordinary skill in the field of the invention would understand it to mean." *Dow Chem. Co. v. Sumitomo Chem. Co.*, 257 F.3d 1364, 1372 (Fed. Cir. 2001) (citation omitted).

"Claims must be read in view of the specification, of which they are a part." *Markman*, 52 F.3d at 979 (citations omitted). The specification may reveal "whether the inventor has used

any terms in a manner inconsistent with their ordinary meaning." *Vitronics Corp.*, 90 F.3d at 1582 (also noting that "the specification is always highly relevant to the claim construction analysis. Usually, it is dispositive; it is the single best guide to the meaning of a disputed term"). The specification also serves as an aid in determining "the meaning of the claim term as it is used . . . in the context of the entirety of [the] invention." *Interactive Gift Express, Inc. v. Compuserve Inc.*, 231 F.3d 859, 866 (Fed. Cir. 2000) (*quoting Comark Communs., Inc. v. Harris Corp.*, 156 F.3d 1182, 1187 (Fed. Cir. 1998)).

The claims, however, are not limited to the embodiment shown in the specifications. *Anchor Wall*, 340 F.3d at 1306-07; *Transmatic, Inc. v. Gulton Indus.*, 53 F.3d 1270, 1277 (Fed. Cir. 1995). Limitations appearing only in the specifications cannot be read into a claim because "the claim, not the specification, measures the invention." *Howes v. Zircon Corp.*, 992 F. Supp. 957, 961 (N.D. Ill. 1998) (*citing SRI Int'l v. Matsushita Elec. Corp. Of Am.*, 775 F.2d 1107 (Fed. Cir. 1985)). However, when the specification "makes clear that the invention does not include a particular feature, that feature is deemed to be outside the reach of the claims of the patent, even though the language of the claims, read without reference to the specification, might be considered broad enough to encompass the feature in question." *SciMed Life Sys., Inc. v. Advanced Cardiovascular Sys., Inc.*, 242 F.3d 1337, 1341 (Fed Cir. 2001).

The publicly available prosecution history, which details the proceedings before the Patent and Trademark Office ("PTO"), may limit the interpretation of claim terms by revealing express representations made by the applicant regarding the scope of the claims or by excluding interpretations that were disclaimed during prosecution. *Vitronics*, 90 F.3d at 1582-83. However, "unless altering claim language to escape an examiner rejection, a patent applicant

3

only limits claims during prosecution by clearly disavowing claim coverage." *Kopykake Enters. v. Lucks Co.*, 264 F.3d 1377, 1382 (Fed. Cir. 2001) (internal quotation and citation omitted). Any such disavowal "must be clear and unmistakable." *Anchor Wall*, 340 F.3d at 1307. Finally, extrinsic evidence such as expert testimony may be considered only where the language of the claims remains ambiguous after consideration of the claim language, specification and file history. *Key Pharms. v. Hercon Lab. Corp.*, 161 F.3d 709, 716 (Fed. Cir. 1998). "[E]xtrinsic evidence in general, and expert testimony in particular, may be used only to help the court come to the proper understanding of the claims; it may not be used to vary or contradict the claim language." *Vitronics*, 90 F.3d at 1584.

## III. CLAIM CONSTRUCTION FOR THE '929 PATENT

### A. The Preamble

The first of the two issues before me is the meaning of the preamble. It states: "In a cordless portable electric screwdriver having a chuck for normally holding a tool for rotary driven motion at one end thereof, the improvement comprising . . . ." The two sides disagree about whether the phrase "cordless portable electric screwdriver" is a claim limitation, or merely a statement of intended use.

The parties agree that claims 1 and 7 of the '929 patent are in the Jepson format.[1] They disagree, though, about whether, nevertheless, the preamble serves as a claim limitation or merely a statement of intended use.

---

[1] A claim that is in this format "first describes the scope of the prior art and then claims an improvement over the prior art." *Dow Chemical Co. v. Sumitomo Chemical Co., Ltd.*, 257 F.3d 1364, 1368 (Fed. Cir. 2001)

Defendant takes the position that, as a matter of law, a Jepson claim has a preamble that is limiting. Defendant argues, therefore, the fact that the claims are in Jepson format leads, *ipso facto*, to the conclusion that the preamble is a claim limitation. Defendant relies principally upon three cases from the Federal Circuit: *Catalina Marketing International, Inc. v. Coolsavings.com, Inc.*, 289 F.3d 801 (Fed. Cir. 2002); *Epcon Gas Systems, Inc. v. Bauer Compressors, Inc.*, 279 F.3d 1022 (Fed. Cir. 2002); and *Rowe v. Dror*, 112 F.3d 473 (Fed. Cir. 1997). If Defendant is correct, i.e., if I were to conclude that claims in the Jepson format always, as a matter of law, have preambles that limit, then I would need to go no further on this point. If I were to agree with Defendant's reading of Federal Circuit precedent, I would conclude that the preamble is, in fact, a claim limitation.

I do not read the cases as creating a *per se* rule that Jepson claims always have a preamble that is limiting. In *Catalina*, for instance, the Federal Circuit expressly states that "[n]o litmus test defines when a preamble limits claim scope." *Catalina*, 289 F.3d at 808. Defendant nonetheless asks me to apply a litmus test and declare that when claims are in Jepson format, the preamble is necessarily limiting. In addition, the *Catalina* court opined that "Jepson claiming *generally* indicates intent to use the preamble to define the claimed invention, thereby limiting scope." *Id.* (emphasis supplied). The inclusion of the word "generally" in the sentence indicates that the Federal Circuit was not setting forth an iron-clad rule. That is, I do not believe that, as a matter of law, Jepson claims always have a preamble that is limiting.

Though I do not agree that, as a matter of law, Jepson claims always have preambles that limit, that is not to say that the fact that it is a Jepson claim is totally unrelated to the question of whether the preamble limits. I read *Catalina* as creating a presumption—albeit a rebuttable

5

one—that Jepson claims have preambles that limit. Having concluded that Jepson claims do not have preambles that are, by definition, claim limitations, the question becomes whether Plaintiff has rebutted the *Catalina* presumption and established that the preamble in the '929 patent is merely a statement of intended use.

Plaintiff has overcome the presumption; the preamble is merely a statement of intended use and not a claim limitation. First, two other judges in this District have considered this question, and both concluded that the preamble of the '929 patent is a statement of intended use as opposed to a claim limitation. *See Eazypower v. Performance Tool*, No. 98 C 6583 (N.D. Ill. July 15, 2003) (order denying Defendant Performance Tool's motions for partial summary judgment) (St. Eve, J.); *Eazypower v. Vermont American Corp.*, No. 01 C 3252, 2003 WL 1720024 (N.D. Ill. March 28, 2003) (Guzman, J.). While neither of these decisions have preclusive effect, both are relevant nonetheless

I have reviewed the entire patent in order to "gain an understanding of what the inventors actually invented and intended to encompass by the claim." *Catalina*, 289 F.3d at 808 (*quoting Corning Glass Works v. Sumitomo Electric U.S.A., Inc.*, 868 F.2d 1251, 1257 (Fed.Cir. 1989)). Like Judges Guzman and St. Eve, I conclude that the preamble is a statement of intended use. In particular, Judge Guzman's opinion is thorough, well-reasoned, and ultimately persuasive. For substantially the same reasons he lays out, I conclude—as he did—that "the preamble is not necessary to give life to the claims," therefore, "it is not a claim limitation." *Eazypower v. Vermont America Corp.*, No. 01 C 3252, 2003 WL 1720024, at *10 (N.D. Ill. March 28, 2003) (Guzman, J.).

B.     *"Said Flexible Extension Shaft Normally [Being] Disposed So As To Be Substantially Entirely Coaxial With Said Chuck"*

The next issue is the construction of the claim "said flexible extension shaft normally [being] disposed so as to be substantially entirely coaxial with said chuck." Interestingly, both sides argue that I should apply the plain and ordinary meaning. They disagree, however, as to what the "plain and ordinary meaning" is.

Eazypower submits that the term means: "When the device is positioned in a chuck, said positioning is usually substantially entirely coaxial with the chuck." By contrast, Jore submits that this term means:

> When the flexible extension shaft is released from a manually deflected in-use condition, it returns to a condition in which it extends in an approximately straight line that is nearly coaxial with the screwdriver chuck along substantially the entire length of the extension shaft.

At bottom, Eazypower argues that the phrase means that the standard position of the shaft of its device is straight, i.e., not bent or angled. Jore, on the other hand, argues that the phrase means that after the user applies pressure and bends or angles the shaft, that it automatically returns to the straight (i.e., not bent or angled) position after the pressure is released.

Having reviewed the patent in its entirety, I find that Eazypower's construction is the appropriate one. It is true that Eazypower's device, as currently manufactured, does return back to its original straight position after the user releases the pressure that caused the shaft to curve. Nevertheless, I find nothing in the language of the patent to suggest that this limitation is contained therein. The term "normally" simply refers to the fact that the default position of the device is straight. For instance, it is straight when housed in the packaging in which it is sold. But the fact that the default position is straight does not mean that the device necessarily must

"spring back" to that position when the force that bent it in the first place is removed. Had the patentee intended the limitation that Defendant suggests, there are many ways it could have written it. It could have used "springs back," or "returns," or some other such phrase. The fact that nothing along those lines is included leads me to conclude that the limitation Jore proposes is not included in the patent.

## III. CONCLUSION

For the aforementioned reasons, I find that the Preamble does not serve as a claim limitation, but rather, it is merely a statement of intended use. In addition, I adopt Eazypower's construction of the phrase, "said flexible extension shaft normally [being] disposed so as to be substantially entirely coaxial with said chuck."

ENTER:

_____
James B. Zagel
United States District Judge

DATE: August 14, 2008