UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | | |
|---|---|---|
| EAZYPOWER CORPORATION, an Illinois corporation, | ) ) ) ) | |
| Plaintiff, | ) ) | Civil Action No. 04C 6372 |
| v. | ) ) | Hon. James B. Zagel |
| JORE CORPORATION, a Delaware corporation, | ) ) ) | Magistrate Judge Levin |
| Defendant. | ) ) ) | |

## DEFENDANT JORE CORPORATION'S MEMORANDUM IN SUPPORT OF ITS MOTION FOR PARTIAL SUMMARY JUDGMENT OF NON-INFRINGEMENT

## TABLE OF CONTENTS

I. INTRODUCTION ................................................................................................1

II. THE SUBJECT MATTER OF THE '929 Patent ................................................2

III. ARGUMENT ...................................................................................................3

    A.    The Legal Framework ................................................................................3

         1. Standards for Summary Judgment ........................................................3

         2. Infringement ..........................................................................................3

    B.    The Claims At Issue ..................................................................................4

    C.    Jore Does Not Infringe Because Its Flexible Extension Shaft Does Not Meet the "Normally Being Disposed" Language of Independent Claims 1 and 7 ....................................................................6

         1. The Court Has Interpreted the "Normally Being Disposed" Claim Language ..................................................................................6

         2. The Jore Flex Shaft Product Has No "Default" or "Standard" Position in Which It Is Straight .........................................................7

         3. A Reasonable Jury Could Not Find For Eazypower on the Issue of Infringement ......................................................................9

    D.    Jore Does Not Infringe Because Its Flexible Extension Shaft Does Not Have the "Internal Shoulders" Required by Independent Claims 1 and 7 ..............................................................13

         1. The "Internal Shoulders" Requirement as Claimed and Disclosed in the '929 Patent ..........................................................13

         2. Claims 1 and 7 Are Not Infringed Without Internal Shoulders That Form Stops for Associated Cylindrical Body Portions ..................................................................................14

3. The Jore Flexible Extension Shaft Does Not Meet the "Internal Shoulder" Requirement of the '929 Patent Claims ............................................................................21

E. Infringement is Not Present Under the Doctrine of Equivalents ............................................................................23

1. Applicable Legal Standard ................................................................23

2. Infringement Under the Doctrine of Equivalents Has Not Been Asserted in This Case ..........................................................23

3. There is No Equivalent to the "Normally Being Disposed" or the "Internal Shoulders" Limitations of Claims 1 and 7 of the '929 Patent ..............................................................................24

IV. CONCLUSION....................................................................................26

## TABLE OF AUTHORITIES

**FEDERAL CASES**

*Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255, 106 S.Ct. 2505, 2513 (1996)................3, 9

*Celotex Corp. v. Catrett*, 477 U.S. 317, 324, 106 S.Ct. 2548, 2553 (1986)................................3

*DePuy Spine, Inc. v. Medtronic Sofamor Danek, Inc.*, 469 F.3d 1005, 1016-17
(Fed. Cir. 2006).........................................................................................................23

*Dolly Inc. v. Spaulding & Evenflo Cos.*, 16 F.3d 394, 398 (Fed. Cir. 1994) ...............................23

*Eazypower Corp. v. ICC Innovative Concepts Corp.*, N.D. Ill., Case No. 98-CV-3189 .....14, 17

*Eazypower Corp. v. Performance Tool*, N.D. Ill., Case No. 98-CV-0653..............14, 15, 16, 18

*Eazypower Corp. v. Vermont American Corporation*, N.D. Ill., Case No. 01-CV-0653
.......................................................................................................................14, 15, 18

*Freedman Seating Co. v. Am. Seating Co.*, 420 F.3d 1350, 1358 (Fed. Cir. 2005).....................23

*Graver Tank & Mfg. Co. v. Linde Air Products. Co.*, 339 U.S. 605, 610 (1950) .......................23

*Markman v. Westview Instruments, Inc.*, 52 F.3d 967, 970-71 .....................................................3

*Monsanto Co. v. Syngenta Seeds Inc.*, 50 F.3d 1352, 1359 (Fed. Cir. 2007)..............................4

*Q-Pharma, Inc. v. Andrews Jergens Co.*, 360 F.3d 1295, 1299-1300 (Fed. Cir. 2004)..............3

*Sage Products Inc. v. Devon Industries Inc.*, 126 F.3d 1420, 1424 (Fed. Cir. 1997) ..................23

*Union Paper-Bag Mach. Co. v. Murphy*, 97 U.S. 120, 125 (1877)..............................................23

*Wahpeton Canvas Co., Inc. v. Frontier, Inc.*, 870 F.2d 1546, 1552 (Fed. Cir. 1989)................4

*Warner-Jenkinson Co. v. Hilton Davis Chem. Co.*, 520 U.S. 17, 38-40 (1997) ...........................23

*Wolverine World Wide, Inc. v. Nike, Inc.*, 38 F.3d 1192, 1196 .....................................................3

**OTHER AUTHORITIES**

*American Heritage*® *Dictionary* ...................................................................................................7

# I. INTRODUCTION

This is a patent infringement action in which EAZYPOWER CORPORATION ("Eazypower") alleges that JORE CORPORATION ("Jore") infringes Claims 1, 2, 4, 5, and 7, ("the Asserted Claims") of U.S. Patent No. 4,876,929 ("the '929 Patent"), which issued on October 31, 1989, and is entitled "Portable Screw Driver Having Flexible Extension Shaft."[1] The '929 Patent has expired. Thus, Eazypower is not entitled to injunctive relief.

The flexible extension shaft that is imported into the United States and sold by Jore does not infringe any of the Asserted Claims of the '929 Patent either literally or under the doctrine of equivalents because at least two limitations of those claims and equivalents thereof are missing from the Jore flexible extension shaft. Specifically, (1) the Jore flexible extension shaft does not meet the requirement of "normally being disposed so as to be substantially entirely coaxial with said chuck"[2] and (2) the Jore flexible extension shaft does not include one of the two cylindrical fittings that are located at opposite ends of the patented flexible extension shaft "so as to define a shoulder internally of each of said fittings."[3]

Two missing claim limitations provide this Court with two separate and independent bases for granting Jore's Motion for Partial Summary Judgment of Non-Infringement. One is enough--both are present.

---

[1] JSOF, ¶ 8, Ex. B, Plaintiff's Response to Defendant Jore Corporation's Second Set of Interrogatories Nos. 6-19, p. 6; see also Ex. A, U.S. Patent No. 4,876,929. Citations to "JSOF, ¶__" refer to specified paragraphs of Defendant Jore Corporation's Statement of Material Facts Regarding Its Motion for Partial Summary Judgment of Non-Infringement. Citations to "Ex. _" in this Memorandum refer to the exhibits attached to Defendant Jore Corporation's Statement of Material Facts Regarding Its Motion for Partial Summary Judgment of Non-Infringement, which is being submitted concurrently with this Memorandum.

[2] Claim 1, Col. 4, lines 63-65, and Claim 7, Col. 6, lines 9-11: "said chuck" refers to the chuck (e.g., of a portable electric screwdriver) in which the claimed extension shaft is installed.

[3] Claim 1, Col. 5, lines 10-14, and Claim 7, Col. 6, lines 45-48.

## II. THE SUBJECT MATTER OF THE '929 PATENT

The '929 Patent discloses a cordless portable electric screwdriver having a flexible extension shaft. Figure 3 of the '929 Patent-- reproduced here with descriptive terms added-- shows "cylindrical body portions" (20a and 22a) that are located at the ends of the flexible extension shaft with cylindrical body portion 22a configured for holding a screwdriver bit (or other tool) and cylindrical body portion 20a having a male hex shank (20b) that allows the flexible shaft to be driven by the cordless portable electric screwdriver. A "plurality of concentric coil springs" (30, 32 and 34) extends between the two body portions, with the coil springs being configured so that rotation of body portion 20a by the cordless portable electric screwdriver causes rotation of cylindrical body portion 22a (and, hence, the screwdriver bit or other tool that is held by body portion 22a). A flexible sleeve 36 surrounds the concentric coil springs. The flexible sleeve includes cylindrical fittings (38 and 40) that are secured at opposite ends of the sleeve to define shoulders (46 and 48) internally of fittings 38 and 40, respectively. The cylindrical body portions 20a and 22a are partially contained by cylindrical fittings 38 and 40 with the plurality of coil springs 30, 32, and 34 spacing the cylindrical body portions apart from one another by a distance that is greater than the distance between the shoulders 46 and 48.



FIG.3

-2-

### III. ARGUMENT

**A.     The Legal Framework**

**1.     Standards for Summary Judgment**

Summary judgment is appropriate if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law.  Fed. R. Civ. P. 56(c), *Q-Pharma, Inc. v. Andrews Jergens Co.*, 360 F.3d 1295, 1299-1300 (Fed. Cir. 2004).  Because Eazypower is the non-moving party, its evidence is to be believed and all justifiable inferences are to be drawn in its favor.  *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255, 106 S.Ct. 2505, 2513 (1996); *Q-Pharma* at 1300.

However, Eazypower bears the burden of proving that Jore infringes at least one claim of the '929 Patent.  That being the case, Eazypower must affirmatively demonstrate that there is a genuine issue of material fact that requires trial.  *Celotex Corp. v. Catrett*, 477 U.S. 317, 324, 106 S.Ct. 2548, 2553 (1986).  Here, there is no issue for trial unless Eazypower can show that sufficient evidence exists for a jury to find that Jore has infringed the '929 Patent.  *See, e.g., Anderson v. Liberty Lobby*, 477 U.S. at 249, 106 S.Ct. at 2511.

**2.     Infringement**

A determination of whether there is infringement requires a two-step analysis.  First, the claim must be properly construed to determine its scope and meaning. This first step is a matter of law to be determined by the Court.  *Markman v. Westview Instruments, Inc.*, 52 F.3d 967, 970-71.  In the second step, the claim as properly construed must be compared to the accused device or process.  *Id.* at 976; *Wolverine World Wide, Inc. v. Nike, Inc.*, 38 F.3d 1192, 1196.  It is the plaintiff (Eazypower in this case) who bears the burden of proving that every limitation set forth in the asserted claim is found in the accused product either literally or by the doctrine of equivalents.  *Id.*  "If an express claim limitation is absent from the accused product, there can be no literal infringement as a matter of law." *Id.* at 1199.

The facts of this case are clear. Jore has not infringed the '929 Patent and summary judgment is appropriate because no reasonable jury could find otherwise.

## B.    The Claims At Issue

Two of the Asserted Claims are independent claims--Claim 1 and Claim 7. Dependant Claims 2, 4, and 5 depend from independent Claim 1 and, as such, cannot be infringed absent infringement of independent Claim 1. *See, e.g., Monsanto Co. v. Syngenta Seeds Inc.*, 50 F.3d 1352, 1359 (Fed. Cir. 2007); citing *Wahpeton Canvas Co., Inc. v. Frontier, Inc.*, 870 F.2d 1546, 1552 (Fed. Cir. 1989).

Independent Claims 1 and 7 of the '929 Patent are set forth below, with emphasis added to indicate claim language upon which this motion is based.

> 1.    In a cordless portable electric screwdriver having a chuck for normally holding a tool for rotary driven motion at one end thereof, the improvement comprising:
>
> a flexible extension shaft having a first end adapted to cooperate with said chuck and a second end adapted to hold said tool for rotary driven motion, said first end of said flexible extension shaft and said chuck having complementarily shaped non-circular cross-sections, said chuck having an axis and being adapted to receive said first end of said flexible extension shaft by means of axial insertion of said shaft into said chuck with said non-circular cross-sections in rotationally aligned relationship and said chuck also including means for holding said first end of said flexible extension shaft for rotary driven motion of said shaft, said second end of said flexible extension shaft and said tool having complementarily shaped non-circular cross-sections, said second end of said flexible extension shaft including means for holding said tool for rotary driven motion thereof;
>
> ***said flexible extension shaft normally bing [sic] disposed so as to be substantially entirely coaxial with said chuck***, said flexible extension shaft being universally deflectable relative to said axis of said chuck so as to position said second end of said shaft and said tool at an acute angle relative to said axis of said chuck, said tool being rotary driven by said cordless portable electric screwdriver through said flexible extension shaft;

said flexible extension shaft including a plurality of concentric coil springs in tightly wound adjacent relation extending between and secured to generally cylindrical body portions at said first and second ends of said shaft to accommodate universal deflection of said shaft relative to said axis of chuck, and including a flexible sleeve disposed about said concentric coil springs, *said flexible sleeve having cylindrical fittings secured thereto at opposite ends thereof so as to define a shoulder internally of each of said fittings*, said cylindrical fittings each being adapted to receive one of said cylindrical body portions therein, said cylindrical body portions being spaced apart by a distance greater than the distance between said shoulders in said cylindrical fittings to permit limited axial movement of said cylindrical body portions and said concentric coil springs relative to said cylindrical fittings and said flexible sleeve.

. . .

7.     In a cordless portable electric screwdriver having a chuck for normally holding a tool for rotary driven motion at one end thereof, the improvement comprising:

a flexible extension shaft having a first end adapted to cooperate with said chuck and a second end adapted to hold said tool for rotary driven motion, said first end of said flexible extension shaft and said chuck having complementarily shaped non-circular cross-sections, said chuck having an axis and being adapted to receive said first end of said flexible extension shaft by means of axial insertion of said shaft into said chuck with said non-circular cross-sections in rotationally aligned relationship and said chuck also including means for holding said first end of said flexible extension shaft for rotary driven motion of said shaft, said second end of said flexible extension shaft and said tool having complementarily shaped non-circular cross-sections, said second end of said flexible extension shaft including means for holding said tool for rotary driven motion thereof;

*said flexible extension shaft normally being disposed so as to be substantially entirely coaxial with said chuck*, said flexible extension shaft being universally deflectable relative to said axis of said chuck so as to position said second end of said shaft and said tool at an acute angle relative to said axis of said chuck, said tool being rotary driven by said cordless portable electric screwdriver through said flexible extension shaft;

one of said first end of said flexible extension shaft and said chuck including a male hex shank and the other of said first end of said

flexible extension shaft and said chuck including a female hex shank-receiving opening defining said complementarily shaped non-circular cross-sections;

one of said second end of said flexible extension shaft and said tool including a female hex shank-receiving opening and the other of said second end of said flexible extension shaft and said tool including a male hex shank defining said complementarily shaped non-circular cross-sections;

one of said first and second ends of said flexible extension shaft including a generally cylindrical body portion terminating in said male hex shank and the other of said first and second ends of said flexible extension shaft including a generally cylindrical body portion terminating in said female hex shank-receiving opening;

said flexible extension shaft including a plurality of concentric coil springs in tightly wound adjacent relation extending between and secured to said generally cylindrical body portions of said first and second ends of said shaft to accommodate universal deflection of said shaft relative to said axis of said chuck; and

a flexible sleeve disposed about said concentric coil springs, *said flexible sleeve having cylindrical fittings secured thereto at opposite ends thereof so as to define a shoulder internally of each of said fittings*, said cylindrical fittings each being adapted to receive one of said cylindrical body portions therein;

said cylindrical body portions being spaced apart by a distance greater than the distance between said shoulders and said cylindrical fittings to permit limited axial movement of said cylindrical body portions and said concentric coil springs relative to said cylindrical fittings and said flexible sleeve.

**C.     Jore Does Not Infringe Because Its Flexible Extension Shaft Does Not Meet the "Normally Being Disposed" Language of Independent Claims 1 and 7**

**1.     The Court Has Interpreted the "Normally Being Disposed" Claim Language**

In an August 14, 2008 Memorandum and Order, the Court interpreted the phrase "said flexible extension shaft normally [being] disposed so as to be substantially entirely coaxial

with said chuck" to mean that, "When the device is positioned in a chuck, said positioning is usually substantially entirely coaxial with the chuck."[4]

In explaining its construction of the "normally [being] disposed" claim language the Court specifically noted Eazypower's argument that "the phrase means that the standard position of the shaft of its device is straight, i.e., not bent or angled."[5]

With further regard to the "normally [being] disposed" claim language, the Court commented that, "The term 'normally' simply refers to the fact that the default position of the device is straight. For example, it is straight when housed in the packaging in which it is sold."[6]

### 2. The Jore Flex Shaft Product Has No "Default" or "Standard" Position in Which It Is Straight

The word "default" has several meanings, depending on the context in which it is used. With respect to "default position," the most appropriate meaning of "default" is "a situation or condition that obtains in the absence of active intervention."[7]

Absent active intervention (i.e., an applied force), the position (i.e., shape) assumed by the Jore flexible extension shaft depends on the position it was in the last time it was subjected to active intervention (i.e., an applied force).[8] That is, when a Jore flexible extension shaft is manually bent into a curve and the bending force is removed, the flexible extension shaft will remain in a curved condition.[9] Shown to the right of this text is a Jore flexible extension shaft that was manually flexed to assume a curved condition, released, and

---

4 Ex. C, August 14, 2008, Memorandum Opinion and Order ("Markman Order"), pp. 7-8; JSOF, ¶ 15.

5 Ex. C, Markman Order, p. 7.

6 Ex. C, Markman Order, p. 7.

7 Ex. F, American Heritage® Dictionary of the English Language, Fourth Edition copyright ©2000; JSOF ¶ 19.

8 Ex. G, Declaration of Dr. Wayne Milestone ("Milestone Decl."), ¶ 15.

9 Ex. G, Milestone Decl., ¶ 16; Ex. D, December 9, 2008 Rule 30(b)(6) deposition testimony of Nathan Cantlon, 130:20-131:3.

placed in a scanner.[10] Obviously, the depicted flexible extension shaft would not be "usually substantially entirely coaxial" when placed in a chuck.

In truth, the Jore flexible extension shaft can exhibit undeflected curvature both less than and greater than what is shown here--as well as S-like curvature and positions in which it is angled or bent.[11] Thus, Jore believes that the term "default position" has no meaning with respect to a Jore flexible extension shaft. The undisturbed position of the Jore flexible extension shaft corresponds to numerous shapes that are the result of the position the flexible extension shaft happened to be in when it was last handled (i.e., subjected to an external force).[12]

For the reasons stated above, the Jore flexible extension shaft has no "standard position" in which it "is straight, i.e., not bent or angled."

As noted above, the Court interpreted the "normally disposed" claim language to mean that, "When the device is positioned in a chuck, said positioning is usually substantially entirely coaxial with the chuck" and explained that interpretation in terms of "default" and "standard" positions in which the claimed device is "straight." Since it does not have a default or standard position that is straight, the Jore flexible extension shaft is not within the Court's explanation of "positioning [that] is usually substantially entirely coaxial with the chuck."

---

10 The image corresponds to Figure 3a of Ex. G, the Milestone Decl. and is described at paragraphs 8-9 therein.

11 Ex. G, Milestone Decl., ¶¶ 9 and 15; JSOF ¶ 22.

12 Ex. G, Milestone Decl., ¶ 15.

Even further, when the Jore flexible extension shaft is positioned in a chuck there is no requirement, necessity, or reason for the device to be "substantially entirely coaxial with the chuck" or "straight," regardless of whether it is being installed, removed, or is simply residing in the chuck.  When being installed or removed, the position of the flexible extension shaft is determined by the position at the time installation or removal begins in combination with the way it is being grasped by the person who is installing or removing the device.  While residing in the chuck without being subjected to a deflective force, the device is in whatever position it was in when last handled.[13]

### 3.    A Reasonable Jury Could Not Find For Eazypower on the Issue of Infringement

The burden is on Eazypower to prove that Jore infringes the '929 Patent.  Thus, to avoid summary judgment, Eazypower must provide evidence to show that the Jore flexible extension shaft meets the Court's interpretation of the "normally disposed" claim language.  Specifically, Eazypower must demonstrate that a reasonable jury could find on its behalf. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249, 106 S.Ct. 2505, 2511 (1996).  Eazypower cannot meet the "reasonable jury" standard--all it has is:

> (a)    the general allegation of infringement that is included in the Amended Complaint;
>
> (b)    an infringement claim chart in which Eazypower simply states "When the Jore Flex Shaft is positioned in a chuck, the Jore Flex Shaft is usually substantially entirely coaxial with the chuck"[14]; and

---

13 Ex. G, Milestone Decl., ¶ 15; JSOF, ¶¶ 27-30.

14 Ex. B, Eazypower's response to Jore Interrogatory 9, Plaintiff's Response to Defendant Jore Corporation's Second Set of Interrogatories Nos. 6-19, pp. 7-8.  The wording in Eazypower's interrogatory response is identical to the Court's interpretation of the "normally disposed" claim language.  Ex. C, Markman Order, pp, 7-8.

     (c)     an expert report on the issue of infringement in which Eazypower's expert incorrectly concludes that the Jore flexible extension shaft meets the "normally being disposed so as to be substantially entirely coaxial" claim language.[15]

The allegation of infringement that is set forth in the Amended Complaint is not evidence of infringement. Nor is the entry in a claim chart where Eazypower does nothing more than recite the Court's interpretation of the "normally disposed" claim language.

Eazypower expert James Rice, opines that the Jore flexible extension shaft meets the requirement of "normally being disposed so as to be substantially entirely coaxial with [the chuck in which the device is installed]."[16] However, as shown below, there is no factual foundation for Dr. Rice's opinion.

Dr. Rice's analysis of the "normally being disposed" claim limitation, is premised on the Court's statement that, in the context of the "normally being disposed" claim language, "the term 'normally' simply refers to the fact that the default position of the device is straight. For example, it is straight when housed in the packaging in which it is sold."[17]

Referencing the Court's explanatory statement, Dr. Rice refers to Rule 30(b)(6) testimony given on behalf of Jore by Mr. Nathan Cantlon, stating that:

> Nathan Canton [sic, Cantlon] stated in his deposition a number of times that the position of the accused Jore product is 'straight when housed in the packaging it is sold in….'[18]

---

15 Ex. H, Expert Report of Dr. James Rice Submitted on Behalf of Eazypower Corporation (referred to hereinafter as "Eazypower Infringement Report").

16 The "normally being disposed" claim language is included in what Dr. Rice characterizes as "Claim 1 Element B" and "Claim 7 Element B." Ex. H, Eazypower Infringement Report, pp. 12 and 22, respectively.

17 Ex. C, Markman Order, p. 7; Ex. H, Eazypower Infringement Report, ¶ 29; see, also, JSOF ¶ 32.

18 Ex. H, Eazypower Infringement Report, ¶ 30, p. 13 (footnote referencing transcript page numbers omitted).

Nathan Cantlon never used the words Dr. Rice encloses in quotation marks.[19]  More important, Dr. Rice fails to take into consideration--or even acknowledge--that he is citing only a portion of Nathan Cantlon's testimony.  Mr. Cantlon also testified that the Jore device is packaged and sold with the flexible extension shaft being in a curved or bent position.  A position that cannot be normally or otherwise be "substantially entirely coaxial with said chuck," even if a chuck were present.

For example, Nathan Cantlon testified with respect to a Stanley brand kit consisting of a Jore flexible extension shaft and a small number of screw driver bits--which is shown to the right of this text.  Mr. Cantlon testified that the packaging is what is termed a "skin pack" and that the flexible extension shaft is bent--"sort of wraps around the card." Mr. Cantlon also testified Jore devices marketed under the Hitachi and Kolbalt brands also may have used "skin pack" packaging.[20]



Packaged both straight and curved cannot lead to a conclusion that the Jore flexible extension shaft has a straight default position--and Eazypower's expert Dr. Rice does not represent that it does.  Omitting critical testimony of Mr. Cantlon and without expressly stating--as fact or opinion--that the Jore device has a straight default position, Dr. Rice goes on to state:

> In addition, in typical usage of the device, the user would first position the flexible extension shaft in the chuck of the electric powered screwdriver with the flexible shaft in the default straight position.  The straight position readily accommodates positioning the shaft in the chuck.  Once the flexible shaft is positioned in the chuck the user may then bend the shaft into the desired position as required.  Following the positioning of [sic] in the flexible shaft in the chuck, the user would typically need to position

---

[19] JSOF, ¶ 34.

[20] Ex D, Transcript of Nathan Cantlon December 9 deposition, 123:7 - 124:14; JSOF ¶ 36. The depicted image of the Stanley brand product is Ex. E and was provided to Eazypower in discovery (production number JORE000857).

> the desired tool in the female receiving portion of the shaft. This operation is most readily accommodated with the shaft in the default straight position.[21]

Dr. Rice's discussion of a user positioning a Jore device in "the default straight position" is meaningless where there has been no showing that the Jore device has a "straight default position." Moreover, since Dr. Rice provides no factual bases for his discussion of how one would use the Jore device, it is pure speculation. Like Jore's expert, Dr. Milestone, Dr. Rice is in possession of at least one specimen of the Jore flexible extension shaft. That being the case, he could have personally observed that the Jore flexible extension shaft does not have a default straight position and, further, that the device can readily be placed in a chuck and have a tool installed when it is not straight and is far from being coaxial with the chuck, i.e., while it is angled or bent. Why Dr. Rice chose not to report on personal use and manipulation of the Jore device is a mystery. However, if there is any doubt as to what he would have determined, it will be resolved by demonstration of the Jore device when oral argument is presented. Specifically, physical examination and handling of the Jore device will clearly demonstrate that its shaft is not "usually substantially entirely coaxial with the chuck." It also will demonstrate that the Jore device does not have a "default" or "standard" position that is straight, i.e., not bent or angled.

The Jore flexible extension shaft does not meet the "normally being disposed" requirement of Claims 1 and 7 and Eazypower has failed to present a *prima facie* showing that it does. Summary judgment of non-infringement is warranted and should be granted.

---

21 Ex. H, Eazypower Infringement Report, ¶ 31, p. 13.

### D. Jore Does Not Infringe Because Its Flexible Extension Shaft Does Not Have the "Internal Shoulders" Required by Independent Claims 1 and 7

#### 1. The "Internal Shoulders" Requirement as Claimed and Disclosed in the '929 Patent

Independent Claims 1 and 7 of the '929 Patent both require a flexible sleeve "having cylindrical fittings secured thereto at opposite ends thereof so as to define a shoulder internally of each of said fittings." Both claims also specify that each of the cylindrical fittings is "adapted to receive one of said cylindrical body portions therein." Shown below are the arrangements of the cylindrical fittings (38 and 40) that are illustrated in the upper and lower portions of Figure 3 of the '929 Patent (legends have been added to identify components).



| Cylindrical Fitting 38 of the '929 Patent | Cylindrical Fitting 40 of the '929 Patent |
|---|---|

Cylindrical Fittings 38 and 40 Reproduced From Figure 3 of the '929 Patent

The '929 Patent describes the internal shoulder 46 of the cylindrical fitting 38 as forming a stop for the cylindrical body portion 20a and describes the internal shoulder 48 of the cylindrical fitting 40 as forming a stop for the cylindrical body portion 22a. Specifically, the patent describes the shoulders 46 and 48 of the cylindrical fittings 38 and 40 as follows:

> It will also be seen that a flexible sleeve 36 is disposed about the concentric coil springs 30, 32, 34. As illustrated, the flexible sleeve 36 has cylindrical fittings 38 and 40 secured thereto at opposite ends 42 and 44 thereof to receive one of the cylindrical body portions 20a

and 22a therein and *the flexible sleeve 36 and cylindrical fittings 38 and 40 define shoulders 46 and 48 internally of each of the fittings 38 and 40 to form stops for the cylindrical body portions 20a and 22a.*[22]

### 2. Claims 1 and 7 Are Not Infringed Without Internal Shoulders That Form Stops for Associated Cylindrical Body Portions

This is not the first time Eazypower filed a patent infringement action based on the '929 Patent. In 1998, Eazypower sued a company known as Performance Tool.[23] In a separate lawsuit that same year, Eazypower accused a company known as ICC Innovative Concepts of infringement.[24] In 2001, it was a company known as Vermont American.[25] In each of those lawsuits, Eazypower adamantly took the position--both before the Court and with opposing counsel--that there can be no infringement of the '929 Patent unless the shoulders of an allegedly infringing device form stops for the associated cylindrical body portions.

In the *Performance Tool* case, the nature of the internal shoulders arose in the context of a motion for summary judgment of non-infringement that was filed by Performance Tool. In opposing summary judgment, Eazypower made the following statement relative to the internal shoulder limitations specified in Claims 1 and 7 of the '929 Patent:

> [T]he function of . . . Eazypower's cylindrical fitting 40 that is secured to the flexible sleeve 36 at the tool bit receiving end of the flexible extension shaft 18, *is to form a stop by defining an internal shoulder 48 in the cylindrical body portion 22a to permit limited axial movement of the cylindrical body portion 22a into the cylindrical fitting 40.*[26]

---

[22] Ex. A, '929 Patent, Col. 3, lines 57-66 (emphasis added).

[23] *Eazypower Corp. v. Performance Tool*, N.D. Ill., Case No. 98-CV-0653.

[24] *Eazypower Corp. v. ICC Innovative Concepts Corp.*, N.D. Ill., Case No. 98-CV-3189.

[25] *Eazypower Corp. v. Vermont American Corporation*, N.D. Ill., Case No. 01-CV-0653.

[26] Ex. I, Eazypower's Memorandum in Opposition to Defendant's Partial Summary Judgment re: U.S. Patent No. 4,826,929 [sic, 4,876,929] is Not Infringed ("Eazypower Performance Tool Opposition Paper"), p. 8 (relying upon paragraph 12 of Ex. J, Declaration of Sheldon Mostovoy ("Mostovoy Declaration"), emphasis added. (Dr. Sheldon Mostovoy acted as Eazypower's technical expert in the *Performance Tool* litigation).

In its opposition paper, Eazypower went on to describe infringement by Performance Tool, stating that:

> Based upon paragraphs 12 and 13 of the Mostovoy Declaration, Performance's "floating" *cylindrical fitting performs substantially the same function as the Eazypower secured fitting (**providing a stop for a cylindrical body portion**) in substantially the same way (**via an internal shoulder**) to obtain the same result (**limited axial movement of the cylindrical body portion into the cylindrical fitting**).*[27]

Eazypower's position in *Performance Tool* was clear and unequivocal. Infringement of Claims 1 and 7 of the '929 Patent require shoulders that are defined **internally in each of the recited fittings to form a stop for an associated cylindrical body portion**. But there is more, much more.

In the *Vermont American* litigation, the internal shoulders specified by Claims 1 and 7 of the '929 Patent arose in the context of two motions: Eazypower's motion for summary judgment of infringement and Vermont American's motion for summary judgment of non-infringement.

In its motion for summary judgment of infringement, Eazypower explicitly stated that the internal shoulders recited in the claims of the '929 Patent form stops for the claimed cylindrical body portions. In doing so, Eazypower first referred to the following language of the '929 Patent:

> As illustrated [in Figures 2 and 3], the flexible sleeve 36 has cylindrical fittings 38 and 40 **secured thereto** as [sic, at] opposite ends 42 and 44 thereof **to receive** one of the cylindrical body portions 20a and 22a therein and the flexible sleeve 38 [sic, 36] and cylindrical fittings 38 and 40 define shoulders 46 and 48 **internally of each of the fittings 38 and 40 to form stops for the cylindrical body portions 20a and 22a.**[28]

With respect to infringement by Vermont American, Eazypower went on to state:

---

[27] Ex. I, Eazypower Performance Tool Opposition Paper, p. 10, emphasis added.

[28] Ex. L, Eazypower Corporation's Statement of Material Facts for Which There Is No Genuine Issue Filed in Support of its Motion for Partial Summary Judgment on Claims 1 and 7 of the '929 Patent, ¶ 37 (emphasis added).

> Both of VA's secured cylindrical fittings 38 and 40 **form stops** 46 and 48 for the cylindrical body portions 20a and 22b [sic, 22a].[29]

and, further

> In both the VA accused device and the '929 invention, **it is clear that the female end shoulder 48 exists to form a stop for the cylindrical body portion 22a** as discussed in the specification. (*See*, Ex. A, col. 3, ln 63-66) (". . . cylindrical fittings 38 and 40 define **shoulders 46 and 48 internally of each of the fittings 38 and 40 to form stops for the cylindrical body portions 20a and 22a**").[30]

In opposing Vermont American's cross-motion for summary judgment of non-infringement, Eazypower repeated its position that the internal shoulders recited in Claims 1 and 7 of the '929 Patent form stops for the cylindrical body portions that are defined by the claims. First, as it did in its own motion papers, Eazypower referenced the description of the shoulders that is included in the '929 Patent, i.e., that the "flexible sleeve 38[sic, 36] and cylindrical fittings 38 and 40 define shoulders 46 and 48 internally of each of the fittings 38 and 40 to form stops for the cylindrical body portions 20a and 22a."[31] After referring to the "shoulders" disclosure of the '929 Patent, Eazypower stated:

> Further, both VA secured cylindrical fittings 38 and 40 **form stops** 46 and 48 for the cylindrical body portions 20a and 22b [sic, 22a] . . .[32]

Eazypower's statements in its motion on infringement and Vermont American's cross-motion on non-infringement make it clear that Eazypower's position in *Performance Tool* was not a fluke. In two separate cases Eazypower emphatically took the position that the

---

[29] *Id.*, at paragraph 39 (emphasis in the original).

[30] *Id.*, at paragraph 49 (emphasis added).

[31] See, Ex. N, Eazypower Corporation's Memorandum in Response to Vermont American's Motion for Partial Summary Judgment That Its Flexible Extension Shaft Does Not Infringe U.S. Patent No. 4,876,929, pp. 8-9.

[32] *Id.*, p. 9 (emphasis in the original); see, also, Ex. O, Eazypower Corp.'s Responses to Defendant Vermont American Corp.'s Statement of Material Facts Regarding its Motion for Summary Judgment That Its Flexible Shaft Product Does Not Infringe U.S. Patent No. 4,876,929 and Eazypower's Own Statement of Facts Requiring Denial of Vermont American's Motion, ¶ 39.

shoulders that are formed internally in the claimed cylindrical fittings form stops for the associated cylindrical body portions.

In the *ICC* case, the internal shoulders aspect of the '929 Patent claims did not arise in the context of a summary judgment motion relative to infringement or non-infringement. Instead, Eazypower's position was set forth in a November 7, 2000 letter from Donald Flaynik (one of Eazypower's attorneys) to Anthony Handel (an attorney who represented ICC).[33]  The letter refers to a "sample," which apparently was a flexible extension shaft, that had been sent to Attorney Flaynik for infringement evaluation (as a "design-around" to resolve Eazypower's claim of patent infringement).  With respect to the "sample," Attorney Flaynik's letter stated:

> The cylindrical fittings were cut longitudinally to provide an internal view; however, *the placement of the cylindrical fittings upon the flexible sleeve is critical as to infringement*.  (Emphasis added.)

Referring to a hand drawn sketch that accompanied his letter and is reproduced below, Attorney Flaynik described "two possible positions (1 and 2) for the cylindrical fittings." With respect to the position of the cylindrical fittings, indicated by the numeral "1" in the sketch, Attorney Flaynik stated:

> If the cylindrical fittings are located at position 1, the outer ends 3 of the cylindrical fittings engage **external shoulders** 4 of the cylindrical body portions 5 thereby maintaining a one-sixteenth inch gap 6 between inner ends 7 of the cylindrical body portions 5, and adjacent ends 8 of the flexible sleeve 9.  ***Thus, there would be no infringement [of the '929 patent claims]***.  (Emphasis added.)

---

[33] Ex. P, November 7, 2000 letter from Attorney Flaynik to Attorney Handel.



Attorney Flaynik's letter goes on to describe what is shown in the sketch as the second position of the cylindrical fittings (identified by the numeral "2") by stating:

> If the cylindrical fittings are located at position 2, the outer ends 3 of the cylindrical fittings will not engage the external shoulders 4 of the cylindrical body portions 5, instead one of the inner ends 7 of the cylindrical body portions 5 will now engage corresponding adjacent end 8 of the flexible sleeve 9. ***There would now be an internal shoulder and infringement***. (Emphasis added.)

The hand drawn sketch and Attorney Flaynik's description reflects the position taken by Eazypower in the *Performance Tool* and *Vermont American* cases: Infringement of the '929 Patent requires cylindrical fittings with internal shoulders that form stops for the associated cylindrical body portions. Further, the hand drawn sketch and Attorney Flaynik's description specifies that there is ***no infringement*** where ***"the cylindrical fittings engage external shoulders 4 of the cylindrical body portions 5 [in the hand drawn sketch]."*** That is, there is no infringement where the end surfaces of the cylindrical fittings form stops relative to axial movement of the cylindrical body portions.

There is yet another sequence of events in which Eazypower expressly stated that the internal shoulders of the invention claimed in the '929 Patent form stops for the associated cylindrical body portions.

Eazypower filed a patent application with the European Patent Office having a written description and drawings that were identical to the written description and drawings of the '929 Patent.  The European Patent Office took the position that the claims submitted to the European Patent Office did not involve "an inventive step," a position that was based on the combination of a French and U.S. patent.[34]  In attempting to overcome the "lack of inventive step" position, Eazypower's attorney filed a written response, stating:

> As you will appreciate, the links 13 and 14 [of the cited U.S. patent] ultimately terminate in a tool shank 18.  ***Without any question, there is no internal shoulder within the flexible casing 12 adapted for stop engagement with a corresponding terminating element arranged in the flexible casing 12 so as to be adapted for limited sliding movements.***  As a result, [the cited French patent] even in combination with [the cited U.S. patent] fails to disclose or suggest the unique structural aspects of the present invention as presently defined in Claim 1.[35]

The August 3, 1993 letter did not persuade the European Patent Office that the claims of the European patent application were patentable.  Instead, on January 12, 1994, the European Patent Office again took the position that the claims being presented by Eazypower failed to demonstrate an "inventive step."  In doing so, the European Patent Office relied upon the previously cited French and U.S. patents and, in addition, a second U.S. patent.[36]  In maintaining its lack of inventive step position, the European Patent Office explained its position as follows:

------

34 See Ex. S, Communication pursuant to Article 96(2) and Rule 51(2) EPC, dated 6.04.93 (April 6, 1993) ("the Second Examination Report"); and see, also, Ex. G, Milestone Decl. ¶ 41.

35 Ex. T, August 3, 1993 letter from Eazypower's European attorneys, W.P. Thompson & Co., to the European Patent Office, pp. 1-2; see also, Ex. G, Milestone Decl., ¶ 42.

36 Ex. U, January 12, 1994 communication from the European Patent Office.

> [The newly cited U.S. patent] discloses a flexible extension shaft from which the claimed invention in effect is distinguished only in that; (a) - it is intended to be driven by a portable electric means such as a cordless electric screwdriver rather than manually, and (b) - the particular arrangement of the cylindrical fittings at the end of the flexible outer sleeve.[37]

The January 12, 1994 communication also stated:

> More particularly, the [newly cited U.S. patent] device includes a flexible core shaft (2) partly surrounded by a flexible sleeve (1) and with a first and second end, each end including an integral (as regards rotation) cylindrical body portion (3 resp. 13). Shoulders are formed by the axial end surfaces of the flexible sleeve (1) adjacent the corresponding cylindrical body portion (3 resp. 13). These body portions are spaced apart by a distance greater than the distance between said shoulders.[38]

Responding to the January 12, 1994 rejection by the European Patent Office, the attorney for Eazypower stated:

> *The cylindrical fittings* not only, in co-operation with the flexible sleeve, *provide internal shoulders to permit limited movement of the cylindrical body portions relative thereto,. . . .*[39]

Despite this response, the European Patent Office remained steadfast in its rejection.

Finally, by appearing at an oral proceeding, Eazypower's attorney managed to convince the European Patent Office that a European patent should be granted. However, to do so, the claims of the European patent application were amended to include the following language:

> *[A] flexible sleeve (36)* disposed about said concentric coil springs (30, 32, 34), said flexible sleeve (36) *comprising a shoulder (46, 48) at each end, each shoulder forming a stop for a respective one of said cylindrical body portions (20a, 22a).*
>
> ...
>
> *[S]aid flexible sleeve (36) comprises cylindrical fittings (38, 40) secured thereto at opposite ends (42, 44) thereof, each cylindrical fitting*

---

37 *Id.*, ¶ 3.

38 *Id.*, ¶ 4. See, also, Milestone Decl., ¶ 43.

39 Ex. V, April 28, 1994 letter from Eazypower's attorneys to the European Patent Office, p. 4.

*defining a respective one of said shoulders (46, 48) therein internally of said fitting (38, 40) and slidably receiving substantially the whole of a respective one of said cylindrical body portions (20a, 22a) rotatably therein.*[40]

Amended as noted, the Eazypower European patent was issued.[41]

Repeated representations by Eazypower in three U.S. infringement actions and its unsuccessful arguments before the European Patent Office leave no doubt: Infringement of the '929 Patent requires a flexible sleeve "having cylindrical fittings secured thereto at opposite ends thereof so as to define a shoulder internally of said fittings" *with* the internal shoulders forming stops for associated cylindrical body portions.

### 3. The Jore Flexible Extension Shaft Does Not Meet the "Internal Shoulder" Requirement of the '929 Patent Claims

Shown below is a portion of Figure 3 of the '929 Patent that depicts shoulder 48 of the cylindrical fitting 40 forming a stop for cylindrical body portion 22a. Shown alongside the portion of the patent figure are the corresponding (female) ends of two specimens of the Jore device, each of which have been cut away to expose the interior of the device.[42]

---

40 *Id.*, Ex. V, April 28, 1994 letter from Eazypower's attorneys to the European Patent Office, p. 4 (emphasis added).

41 Ex. R, European Patent specification 0 359 543 B1.

42 See, Milestone Decl. ¶¶ 8-9, relative to the acquisition and machining of the depicted Jore devices.



| Cylindrical Fitting shown in Figure 3 '929 Patent | Female end Figure 2c of first Jore device | Female end Figure 3c of second Jore device |

Figure 6. Comparison of '929 Female End With That of Jore Device

Neither of the depicted Jore device samples meet the requirement of having a cylindrical fitting secured to the end of a flexible sleeve "***to define a shoulder internally of [the fitting] to form a stop for an associated cylindrical body portion***." Instead, the cylindrical fitting of the Jore device is bell-shaped and the exterior axial end surface of the bell-shaped fitting serves as a stop for an associated body portion. As was set forth in the letter from Eazypower's attorney Flaynik to ICC's attorney Handel, there is no infringement where "the outer ends 3 of the cylindrical fittings engage external shoulders 4 of the cylindrical body portions 5. . . ."[43] That is exactly how the female end of the Jore device is configured. Accordingly, the Jore flexible extension shaft does not meet "the internal shoulders" requirement of the '929 Patent.

---

[43] Numeric references are to the hand drawn sketch that accompanied Attorney Flaynik's letter; letter and hand drawn sketch at Ex. P.

E.      **Infringement is Not Present Under the Doctrine of Equivalents**

1.      **Applicable Legal Standard**

Infringement under the doctrine of equivalents may be found when the accused device contains an "insubstantial" change from the claimed invention. *Graver Tank & Mfg. Co. v. Linde Air Products. Co.*, 339 U.S. 605, 610 (1950). Whether equivalency exists may be determined based on the "insubstantial differences" test or based on the "triple identity" test, namely, whether the elements of the accused device "performs substantially the same function in substantially the same way to obtain the same result," *Warner-Jenkinson Co. v. Hilton Davis Chem. Co.*, 520 U.S. 17, 38-40 (1997) (quoting *Union Paper-Bag Mach. Co. v. Murphy*, 97 U.S. 120, 125 (1877)). The essential inquiry is whether "the accused product or process contains elements identical or equivalent to ***each*** claimed element of the patented invention[.]" *Warner-Jenkinson*, 520 U.S. at 40 (emphasis added). In other words, the "all elements" rule is applicable to infringement under the doctrine of equivalents just as it is to literal infringement. *DePuy Spine, Inc. v. Medtronic Sofamor Danek, Inc.*, 469 F.3d 1005, 1016-17 (Fed. Cir. 2006); *Freedman Seating Co. v. Am. Seating Co.*, 420 F.3d 1350, 1358 (Fed. Cir. 2005).

However, "the doctrine of equivalents is not a license to ignore claim limitations." *Dolly Inc. v. Spaulding & Evenflo Cos.*, 16 F.3d 394, 398 (Fed. Cir. 1994). Stated otherwise, "[T]he doctrine of equivalents does not grant [a patentee] license to remove entirely [any of the] limitations from a claim." *Sage Products Inc. v. Devon Industries Inc.*, 126 F.3d 1420, 1424 (Fed. Cir. 1997).

2.      **Infringement Under the Doctrine of Equivalents Has Not Been Asserted in This Case**

Eazypower did not plead infringement under the doctrine of equivalents in its complaint or its amended complaint. In discovery, Jore served an interrogatory requesting specification as to which claims were allegedly infringed, identification of the structure or feature of the Jore device that corresponds to each claim element, and whether the contended correspondence is literal or under the doctrine of equivalents. Eazypower responded with a

claim chart directed to literal infringement. Eazypower did not provide the element-by-element doctrine of equivalents analysis that was required by the interrogatory.[44] Finally, and of paramount importance, Eazypower's expert report addresses only literal infringement, without even mentioning the doctrine of equivalents.[45]

The pleadings are closed, fact discovery is over, and all expert reports have been served. Eazypower cannot now assert infringement under the doctrine of equivalents.

### 3. There is No Equivalent to the "Normally Being Disposed" or the "Internal Shoulders" Limitations of Claims 1 and 7 of the '929 Patent

Although no argument is needed with respect to infringement under the doctrine of equivalents, Jore believes that its flexible extension shaft clearly has no equivalence with respect to either the "normally being disposed" limitation or the "internal shoulders" requirement of the '929 Patent claims. Perhaps it is the clear lack of equivalents that resulted in Eazypower not asserting infringement under the doctrine of equivalents.

As discussed relative to literal infringement, the Court interpreted the "normally being disposed" claim language to mean that, "when the device is positioned in a chuck, said positioning is usually substantially entirely coaxial with the chuck." In explaining its interpretation, the Court referred to Eazypower's position that "the phrase means that the standard position of the shaft of its [patented] device is straight, i.e., not bent or angled." Further, the Court stated that, in the context of the "normally being disposed" claim language, "normally" simply refers to the fact that the default position of the device is straight.[46] With respect to literal infringement it has been shown that the Jore device does not have a default position in which it is straight and, further, at no time during use is there a reason for it to be

---

[44] Ex. B, Plaintiff's Response to Defendant Jore Corporation's Second Set of Interrogatories Nos. 6-19, pp. 6-12.

[45] Ex. H, Expert Report of Dr. James Rice Submitted on Behalf of Eazypower Corporation, referred to elsewhere in this Memorandum as the "Eazypower Infringement Report."

[46] See, Ex. C, Markman Order, pp. 7-8 and Section C1 of this Memorandum.

"usually substantially entirely coaxial with the chuck." A holding that the Jore device infringes the "normally being disposed" limitation under the doctrine of equivalents would render the "normally being disposed" claim limitation meaningless, which, is not allowed in view of the above-referenced decisions of the United States Supreme Court and the Court of Appeals for the Federal Circuit.

For the same reason, equivalence cannot exist between the internal shoulders limitation of the '929 Patent claims and any element or feature of the Jore device. The claims of the '929 Patent specifically call for a flexible sleeve "***having cylindrical fittings secured thereto at opposite ends thereof so as to define a shoulder internally of each of said fittings.***" Eazypower specified that the internally defined shoulders of the patented device form stops for the cylindrical body portions that are called for by the patent claims--not just once, but in three separate patent infringement actions and in obtaining a European patent.

The Jore device has no equivalent structure. At the female end of the Jore device, it is the exterior axial end of the bell-shaped fitting that serves as a stop for an associated body portion. There can be no equivalence between the exterior axial end of a bell-shaped fitting and an internal shoulder of a cylindrical fitting. If such "equivalence" were to exist, "external" would be "internal" and claim language requiring a "flexible sleeve having cylindrical fittings secured thereto at opposite ends thereof so as to define a ***shoulder internally of each of said fittings***" would have no meaning. As described above, the doctrine of equivalents cannot be applied to vitiate a claim limitation. It is not a license to remove entirely any limitation from a claim.

In addition, the declaration of Jore's technical expert, Dr. Wayne Milestone, in support of this motion (Exhibit G) includes his analysis of the doctrine of equivalents for the "normally being disposed" and "internal shoulders" claim limitations using the function-way-result test. Dr. Milestone's analysis provides even further reasons that the Jore device does not infringe the claims of the '929 Patent under the doctrine of equivalents.

**IV. CONCLUSION**

As described herein, the Jore flexible extension shaft does not literally infringe Claims 1 and 7 of the '929 Patent. There is no infringement of Claims 2, 4, and 5 because each of those claims depends from independent Claim 1.

There is no issue as to whether the Jore flexible extension shaft infringes the '929 Patent under the doctrine of equivalents. However, if there were, infringement could not be found.

Dated this 29th day of May, 2009.

CHRISTENSEN O'CONNOR
JOHNSON KINDNESS<sup>PLLC</sup>

/s/ James W. Anable
James W. Anable, WSBA No.: 7,169
John D. Denkenberger, WSBA No.: 25,907
Christensen O'Connor Johnson Kindness<sup>PLLC</sup>
1420 Fifth Avenue, Suite 2800
Seattle, WA 98101-2347
Telephone: 206-682-8100
Fax: 206-224-0779
E-mail: anable@cojk.com,
jim.anable@cojk.com,
john.denkenberger@cojk.com
courtdoc@cojk.com

And

Michael Adam Dorfman (IL Bar No. 6255860)
Breighanne A. Eggert (IL Bar No. 6289475)
KATTEN MUCHIN ROSENMAN LLP
525 West Monroe Street, Suite 1900
Chicago, IL 60661-3693
Telephone: 312-902-5200
Fax: 312-902-1061
E-mail: michael.dorfman@kattenlaw.com
Email: breighanne.eggert@kattenlaw.com

Attorneys for Defendant Jore Corporation