Order Form (01/2005)

# United States District Court, Northern District of Illinois

| Name of Assigned Judge or Magistrate Judge | Judge Zagel | Sitting Judge if Other than Assigned Judge | |
|---|---|---|---|
| **CASE NUMBER** | 04 C 6372 | **DATE** | January 24, 2012 |
| **CASE TITLE** | EAZYPOWER CORPORATION v. JORE CORPORATION | | |

**DOCKET ENTRY TEXT:**

Motion for reconsideration or in the alternative, clarifying of order denying Jore's motion for partial summary judgment of non infringement [176] is granted. Enter amended order denying partial summary judgment.

## STATEMENT

**I. OVERVIEW**

This is a patent infringement action in which Eazypower alleges that Jore infringed Claims 1, 2, 4, 5, and 7 of Patent 4,876,929 ("the '929 Patent'"). The '929 Patent is entitled "Portable Screw Driver Having Flexible Extension Shaft" and has expired. I previously denied Jore's motion for summary judgment regarding the alleged invalidity of the '929 Patent, and Jore now moves for summary judgment of non-infringement. A hearing was held on this motion and both parties presented oral arguments. Having considered the written briefs and the oral arguments, I am denying Jore's motion for summary judgment.

**II. DISCUSSION**

Jore argues that summary judgment for non-infringement is proper on two grounds. First, Jore contends that the Jore flexible extension shaft does not meet the requirement of "normally being disposed so as to be substantially entirely coaxial with said chuck." The second basis for summary judgment is that the Jore flexible extension shaft does not include one of the two cylindrical fittings that are located at opposite ends of the patented flexible extension shaft "so as to define a shoulder internally of each of said fittings."

A. "Normally Being Disposed So As To Be Substantially Entirely Coaxial."

In August, 2008, I interpreted the phrase "said flexible extension shaft normally [being] disposed so as to be substantially entirely coaxial with said chuck" to mean that, "when the device is positioned in a chuck, said positioning is usually substantially entirely coaxial with the chuck." The first basis on which Jore seeks summary judgment is that its device has no "default" or "standard" position in which it is straight. In other words, absent active intervention, the position assumed by the flexible extension shaft depends on the

position it was in the last time it was subjected to active intervention. For example, when a Jore shaft is manually bent into a curve and the bending force is removed, the flexible extension shaft will remain in a curved position. For these reasons, Jore argues that its shaft has no "standard position" in which it is straight, or not bent or angled. Accordingly, the Jore shaft would not be "usually substantially entirely coaxial" when placed in a chuck. Jore also argues that each time its extension shaft is placed in a chuck, its coaxial or non-coaxial relationship to the axial centerline of the chuck is determined by the way it is being grasped by the person who is placing the shaft in the chuck. Therefore, Jore contends the flexible extension shaft's relationship to the axial centerline of the chuck need not be a coaxial relationship, as is required by the patent.

I note that the Markman Order does not directly reference any 'default' or 'standard' position. Instead, the Order interpreted the "normally disposed" claim to mean that "when the device is positioned in a chuck, said positioning is usually substantially entirely coaxial with the chuck." I explained this phrase to mean that the "*standard* position of the shaft of its device is straight, i.e., not bent or angled." With regard to the "normally [being] disposed" claim language, I commented that "the term 'normally' simply refers to the fact that the *default* position of the device is straight. For example, it is straight when housed in the packaging in which it is sold." From this, Jore argues that an appropriate definition of a "default" position is "a situation or condition that obtains in the absence of active intervention." Jore asserts that its device does not have a 'default' or 'standard' position in which the device is straight. In the Markman Order, however, I also stated that "I find nothing in the language of the patent to suggest that this [returning to a straight position after the user releases the pressure that caused the shaft to curve] limitation is contained therein. The term 'normally' simply refers to the fact that the default position of the device is straight. . . . But the fact that the default position is straight does not mean that the device necessarily must 'spring back' to that position when the force that bent it in the first place is removed."

I am unpersuaded by Jore's arguments and deny summary judgment regarding this issue. The trier of fact could find that in the typical usage of the Jore device, the flexible shaft of the invention is substantially entirely coaxial with the chuck. Accordingly, summary judgment is improper.

B. Internal Shoulder That Forms A Stop For An Associated Cylindrical Body Portion

Claims 1 and 7 both require a flexible sleeve "having cylindrical fittings secured thereto at opposite ends thereof so as to define a shoulder internally of each of said fittings." Both claims also specify that each of the cylindrical fittings is "adapted to receive one of said cylindrical body portions therein." Jore admits that one end of its flexible extension shaft includes a cylindrical fitting that includes an internal shoulder that serves as a stop. Jore argues, however, that because the other end of its flexible extension shaft does not have an internal shoulder that serves as a stop, there is no infringement.

The parties make two arguments that go to issues of claim construction, rather than summary judgment. First, the parties dispute whether or not the 'internal shoulder' must serve as a stop. This is a matter for claim construction, which is inappropriately brought in this motion for summary judgment. Jore has never claimed that any claim terms are ambiguous or in dispute other than those already ruled upon by the Court. Nevertheless, it now presents extrinsic evidence to show that the '929 Patent requires that the internal shoulder must serve as a stop. The evidence presented takes the form of prior lawsuits where Eazypower has taken the position that the internal shoulders set forth in the patent form stops. Jore has had ample time to argue that the patent requires that the internal shoulder must form a stop, yet it has failed to do so. Moreover, as I noted at the summary judgment hearing, I am disinclined to rely heavily on arguments or theories asserted in prior cases. There is no claim language in claims 1 or 7 requiring that internal shoulders form a stop, and

there is no limitation in either claim that requires a stop at all. Instead, the Preferred Embodiment states that "the flexible sleeve 36 and the cylindrical fittings 38 and 40 define shoulders 46 and 48 internally of each of the fittings 38 and 40 to form a stop for the cylindrical body portions 20a and 22a." I deny summary judgment as to this line of argument.

Similarly, Eazypower raises the question of whether the patent requires more than one internal shoulder to be created by the cylindrical fitting and the flexible sleeve. Jore admits that one end of its flexible extension shaft includes a cylindrical fitting that includes an internal shoulder that serves as a stop. Eazypower implies that this is sufficient to show infringement because the second internal shoulder is not required and not claimed in the patent. Eazypower's argument is both muddled and unavailing.

The preferred embodiment states that the flexible sleeve shall have cylindrical fittings secured to the flexible sleeve at opposite ends whereby an internal shoulder is formed. Claims 1 and 7 specify that the:

> "flexible sleeve having cylindrical fittings secured thereto at opposite ends thereof so as to define a shoulder internally of each of said fittings . . . said cylindrical body portions being spaced apart by a distance greater than the distance between said shoulders in said cylindrical fittings to permit limited axial movement of said cylindrical body portions and said concentric coil springs relative to said cylindrical fittings and said flexible sleeves.

The claim language is clear, and Eazypower's suggestion that only one end must form an internal shoulder is unpersuasive.

I am left then, to decide whether summary judgment is appropriate on the issue of whether Jore's device has a second internal shoulder so as to infringe on the Patent. Jore's position is that infringement requires "cylindrical fittings with internal shoulders that form stops for the associated cylindrical body portions." Jore argues that the stop on the device must be internal, whereas the stop in its accused device is on the outside. As I noted *supra*, however, I do not consider the placement of stops for purposes of this motion. The focus of Jore's argument surrounds whether the internal shoulder of the second end form a stop. However, leaving aside the issue of the stop, Jore has failed to show that its device does not infringe the "internal shoulder" claim of the Patent.

## III. CONCLUSION

Summary judgment as to non-infringement is denied.